SCOTT N. SCHOOLS, SBN SC 9990
United States Attorney
LUCILLE GONZALES MEIS, SBN CO 15153
Regional Chief Counsel, Region IX,
Social Security Administration
NANCY M. LISEWSKI, SBN CA 186852
Special Assistant United States Attorney

   333 Market Street, Suite 1500
   San Francisco, California 94105
   Telephone: (415) 977-8943
   Facsimile: (415) 744-0134

Attorneys for Defendant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CASSANDRA J. BRIER,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of<br>Social Security,<br><br>        Defendant. | CIVIL NO. C-06-07373 SBA<br><br>[PROPOSED] ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND |

**FACTUAL BACKGROUND**

Plaintiff Cassandra J. Brier was born on October 12, 1966 (Tr. 70), graduated from high school and attended some college (Tr. 164), and had past work as a camp cook, retail customer-service clerk, retail sales clerk, and fast-food cook (Tr. 100-107). On September 16, 2003, Plaintiff applied for Supplemental Security Income benefits (SSI) (Tr. 70-72). Plaintiff's claim was denied initially and upon reconsideration (Tr. 39-51). She requested a hearing before an Administrative Law Judge ("ALJ") (Tr. 54).

An ALJ opened a hearing on February 28, 2005 with Plaintiff, her attorney, and a vocational expert present (Tr. 250-300). On July 6, 2005, the ALJ found Plaintiff not disabled because she could perform her past relevant or alternative work (Tr. 19-26). The Appeals Council declined review, making the ALJ's decision the Commissioner's final decision (Tr. 6-8). Plaintiff requested judicial review. 42

U.S.C. § 405(g).

## LEGAL STANDARD

The Commissioner's decision must be affirmed upon review if it was supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Sandgathe v. Chater, 108 F.3d 978, 979 (9th Cir. 1997) (citations omitted). "Where evidence is susceptible to more than one rational interpretation," the ALJ's conclusion must be upheld. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The claimant carries the burden of proving disability. See Ukolov, 420 F.3d at 1004; Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999) ("At all times, the burden is on the claimant to establish . . . entitlement to disability insurance benefits") (citations omitted). "Failure to prove disability justifies a denial of benefits." Ukolov, 420 F.3d at 1004.

## DECISION[1]

A. THE ALJ REASONABLY CONSIDERED AND REJECTED THE TREATING OPINIONS

The ALJ is responsible for resolving conflicts in the medical testimony and analyzing the evidence. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). Opinions of even a treating

---

[1] Plaintiff alleges an error in the consideration of reopening. This argument is meritless. Plaintiff's prior application, abandoned in 1998, could only be reopened for good cause within four years (Tr. 34-35). 20 C.F.R. § 404.988 (2007). While Plaintiff filed a second application, that application was filed more than four years later, and Plaintiff only seeks reopening now before this Court (Tr. 70).

Further, 20 C.F.R. 404.911 (2007), which allows a claimant to establish good cause for missing a deadline for seeking further administrative review, does not mandate a different result, particularly where only now before this court does Plaintiff's counsel make any argument about why his client abandoned her prior application. Further, even now, the record contains no statement from Plaintiff regarding any claim that she did not get notice of hearing. Finally, contrary to SSR 91-5p, there was no showing of Plaintiff's mental incapacity. See Hoye v. Sullivan, 985 F.2d 990, 991-92 (9th Cir. 1992) (per curiam) (allegations of substantive or procedural due process violations in Social Security proceedings must have factual basis so that the statutory and regulatory review procedures are not undermined). Plaintiff's attempt to "transform a garden-variety administrative action into a case of constitutional magnitude" must be rejected. See Markham v. U.S., 434 F.3d 1185, 1187 (9th Cir. 2005).

physician may be rejected where there is a conflicting opinion and specific, legitimate reasons based on substantial evidence are given. Thomas v. Barnhart, 278 F.3d 948, 957 (9th Cir. 2002); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); see also Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989) (ALJ may reject completely unsupported opinion even if uncontroverted). The Commissioner is solely responsible for determining whether Plaintiff met the statutory definition of disability. See 20 C.F.R. §§ 404.1527(e)(1) and 416.927(e)(1)(2007).

The ALJ found that Plaintiff had the severe impairments of low back strain, possible degenerative disc disease, obesity, hepatitis C, migraine headaches, and a history of allergies (Tr. 25). The mere existence of impairments, however, is insufficient proof of disability. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993); see Sample v. Schweiker, 694 F.2d 639, 642-43 (9th Cir. 1982). Rather, Plaintiff had to show that her problems were so functionally limiting as to prevent her from engaging in any substantial gainful activity for at least twelve consecutive months. See 42 U.S.C. § 423(d)(1)(A); Matthews, 10 F.3d at 680; 20 C.F.R. §§ 404.1509 and 416.909 (2007).

The responsibility for establishing Plaintiff's RFC rested with the ALJ. 20 C.F.R. §§ 404.1546 and 416.946 (2007). To properly determine Plaintiff's RFC, the ALJ can look to statements by treating or examining physicians, consultative physicians, or any other medical or psychological consultant designated by the Commissioner. Id. The ALJ determined that Plaintiff had the RFC to lift up to twenty pounds occasionally and ten pounds frequently (Tr. 24). She could stand and walk (with normal breaks) for a total of about six hours in an eight-hour workday (Tr. 24). She also should alternate sitting and standing every hour during the workday (Tr. 24). She could not work at unprotected heights but could occasionally crouch, crawl, kneel, stoop, balance, and use ramps/stairs (Tr. 24). Plaintiff further could not engage in overhead reaching and must avoid concentrated exposure to dust, pollen, and grasses (Tr. 24). With this RFC, Plaintiff could perform her past relevant or alternative work (Tr. 24-26).

Plaintiff principally argues that the ALJ did not appropriately consider the report by treating physician Cassandra Garcia, M.D., develop the record, or consider her obesity. However, the ALJ gave Plaintiff all benefit of the doubt by limiting her to a range of light work (Tr. 19-26). For example, in May 2004, Margaret Marquez, M.D., performed a consultative examination (Tr. 22-24, 156-162). After examination, Dr. Marquez concluded that Plaintiff could frequently lift up to fifty pounds and stand and

3

walk for "at least" six hours in an eight-hour workday with no restrictions on sitting (Tr. 24, 161). Dr. Marquez also found no postural or manipulative limitations (Tr. 24, 162). She noted that "no assistive device is medically indicated" though Plaintiff may wish to use her cane (Tr. 24, 162). Dr. Marquez suspected "a component of deconditioning" (Tr. 162).[2] Dr. Marquez also noted that Plaintiff was morbidly obese at 5'4" and 294 pounds (Tr. 24, 158-159). She had a normal gait and could balance on one foot (Tr. 159). Her spinal range of motion was normal (Tr. 160). Dr. Marquez diagnosed myofacial low back pain with no evidence of neurologic impairment, depression, obesity, and hepatitis C (Tr. 24, 161).[3]

In contrast to the opinion of Dr. Marquez, Dr. Garcia found that Plaintiff could perform less than sedentary work (Tr. 24, 167-170, 242-245). The ALJ, however, reasonably discounted this report (Tr. 22-24). He noted that a review of the records revealed that the physician opinion was based in part on Plaintiff's subjective complaints. For example, Dr. Garcia diagnosed degenerative disc disease of the spine based on a 1997 MRI; however, the sparse medical records reflect no such MRI or any other objective evidence of such an impairment (Tr. 168, 279).[4] See, e.g., Tonapetyan v. Halter, 242 F.3d

---

[2] Deconditioning is defined as "to cause to decline from a condition of physical fitness, as through a prolonged period of inactivity or, in astronauts, through weightlessness in space." The Free Dictionary, http://www.thefreedictionary.com/deconditioning.

[3] Plaintiff also argues that the ALJ did not appropriately consider her obesity. However, the ALJ properly considered obesity under SSR 02-01 (Tr. 24). Significantly, Dr. Marquez, while acknowledging Plaintiff's obesity, found that she was capable of medium work, which fully supported the ALJ's determination (Tr. 22-24, 158, 161-162).

[4] Indeed, contrary to Plaintiff's counsel's current argument, her prior counsel clearly stated: "There is a mention in the record of an MRI in 1997. There isn't one. It's an incorrect notation" (Tr. 279). It is the ALJ's duty to develop the record, not to create one. Particularly given this clear statement by Plaintiff's former counsel, the ALJ fulfilled his duty under Brown v. Heckler, 713 F.2d 441 (9th Cir. 1983) to fully and fairly develop the record. Given Plaintiff's alleged onset date, whether or not this MRI existed is not in and of itself relevant. However, the ALJ reasonably gave less weight to Dr. Garcia's opinion where it appeared to be based on evidence that Plaintiff's counsel conceded did not exist and was simply not supported by objective evidence (Tr. 22, 24). See Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) (ALJ need not accept a medical opinion that is brief, conclusory and unsupported by clinical findings). Indeed, Plaintiff only began to perform substantial gainful activity after the date of this alleged MRI. Moreover, despite the lack of evidence, the ALJ found that "in an abundance of caution and according some minimal weigh to Dr. Garcia's assessment, I will assume that claimant's low back

1144, 1149 (9th Cir. 2001) (holding that the ALJ properly rejected a physician's opinion which was premised on a claimant's subjective complaints); <u>Andrews</u>, 53 F.3d at 1040 (same) ("an ALJ may properly consider a claimant's lack of credibility and the extent to which his physician's opinion is influenced by the claimant's own information"); <u>Fair</u>, 885 F.2d at 605 (ALJ properly disregarded a treating physician's opinion because it was premised on a claimant's subjective complaints, which the ALJ had already discounted). As discussed below, Plaintiff's complaints of pain and other subjective symptoms were properly discounted by the ALJ, a relevant factor to consider in weighing the medical opinions. <u>Id</u>. Moreover, the ALJ noted that Plaintiff "either 'no showed' or cancelled her clinic appointments" on at least eleven occasions between July 2003 and December 2004 (Tr. 24, 172-173, 177, 182, 188, 191, 194, 198, 235). The ALJ reasonably found that this suggested "that the severity of her medical impairments is not as great as she claims" (Tr. 24).

The reports of State Agency physicians who reviewed the medical evidence provided further support for the ALJ's finding that Plaintiff's impairments did not result in functional limitations precluding all work activity (Tr. 212-230). <u>See</u> 20 C.F.R. §§ 404.1527(f) and 416.927(f) (2007); Social Security Ruling (SSR) 96-6p ("Findings of fact made by State Agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the [ALJ] and Appeals Council level of administrative review"). Indeed, a State agency physician noted the minimal objective findings in the record (Tr. 217).

The ALJ reasonably gave more weight to the report of Dr. Marquez. Where evidence is susceptible of more than one rational interpretation and the Commissioner has provided a rational interpretation, it must be upheld. <u>Sandgathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir. 1997) (citations and internal quotation marks omitted). Substantial evidence supports the Commissioner's determination that Plaintiff is not disabled under the meaning of the Social Security Act.

B.   THE ALJ PROPERLY REJECTED PLAINTIFF'S CREDIBILITY

Once a claimant has established an underlying medical impairment which could be reasonably

---

strain possibly is precipitated by some degenerative disc disease" (Tr. 22).

expected to produce some subjective symptoms, an ALJ must give specific, clear and convincing reasons to reject allegations of subjectively disabling symptoms. See Thomas, 278 F.3d at 959-60. The ALJ's findings are entitled to deference if they are supported by substantial evidence ("properly supported by the record") and are "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding [subjective symptoms]." Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc); see 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"); SSR 96-7p. An ALJ may consider various factors in assessing the credibility of the allegedly disabling subjective symptoms. See 20 C.F.R. §§ 404.1529 and 416.929 (2007); see Bunnell, 947 F.2d at 346-47; see also Saelee v. Chater, 94 F.3d 520, 523 (9th Cir. 1996)("[o]nly a panel sitting en banc may overturn existing Ninth Circuit precedent"). Such factors include "the nature, location, onset, duration, frequency, radiation, and intensity" of any pain or other symptoms; "precipitating and aggravating factors;" "type, dosage, effectiveness, and adverse side-effects" of any medication; "treatment, other than medication;" "functional restrictions;" "the claimant's daily activities;" "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment;" and "ordinary techniques of credibility evaluation." Bunnell, 947 F.2d at 346-47; see 20 C.F.R. §§ 404.1529 and 416.929 (2007); SSR 96-7p.

The ALJ pointed out multiple reasons for discounting the degree of Plaintiff's impairment (Tr. 24-25). For example, the ALJ reasonably found that Plaintiff's multiple inconsistent reports negatively impacted on her credibility (Tr. 24). See Thomas, 278 F.3d at 958-59. For example, Plaintiff told the consultative examiner that she quit her last job because it was "'too far out in the country,' i.e., it was too geographically isolated and not due to inability to perform the work" (Tr. 22, 24, 164, 166). At the hearing, however, she claimed "she just couldn't do it anymore" (Tr. 256). A claimant's self-serving statements may be disregarded to the extent they are unsupported by objective findings. Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). Moreover, she denied her history of intravenous drugs to Dr. Marquez and was evasive about her continued use of marijuana at the hearing (Tr. 23-24, 157, 276-278). The ALJ also noted that, while Plaintiff claimed that she relied on a cane to walk, she did not bring it into her hearing (Tr. 22, 25, 261).

1     Credibility determinations too must take into account a claimant's "prior work record and efforts to work." SSR 96-7p. "Just as a good work history may be deemed probative of credibility, poor work history may prove probative as well." Schaal v. Apfel, 134 F.3d 496, 502 (9th Cir. 1998). Plaintiff, who could account for less than five years of substantial gainful activity (Tr. 82), reported to Dr. Canty that she "has usually been supported by boyfriends and that her current boyfriend of four years has been supporting her" (Tr. 164).

    The ALJ further noted that Plaintiff reported doing "most of the chores and her boyfriend handles the money" (Tr. 23, 164). See Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1991) (ability to take care of personal needs, cook, do light housework, and shop for some groceries inconsistent with the preclusion of all work activity). In this case, the ALJ gave legally sufficient reasons supporting his credibility finding.

C.     PLAINTIFF HAD NO SEVERE MENTAL IMPAIRMENTS

    Plaintiff also argues that the ALJ erred in determining that she had no severe mental impairments other than a history of polysubstance abuse in remission. A "non-severe impairment" is one which does not significantly limit one's capacity to perform basic work-related functions. See 20 C.F.R. §§ 404.921 and 416.1521 (2007). Examples of such basic work activities would include physical functions such as walking and standing; the ability to see, hear, and speak; understand, remember, and carry out simple instructions; use judgment, respond appropriately to supervisors, co-workers and usual work situations; and dealing with changes in a work setting. See id. In this case, substantial evidence supports the ALJ's determination that Plaintiff had no severe mental impairment and certainly not one that met the durational requirements. See 42 U.S.C. § 423(d)(1)(A) (twelve-month durational requirements for disability).

    The ALJ explained why he gave the most weight to the report of consultative examiner Dr. Canty (Tr. 23). Significantly, Dr. Canty found no signs of depression, instead "the claimant displayed a 'full affect' and even laughed appropriately during the interview" (Tr. 23, 164). She had clear, logical, and goal-directed thoughts and was fully oriented with a good fund of knowledge (Tr. 164-165). As to why she could not work, Plaintiff said, "[i]t would be hard for me to get up and went (sic) to go to work every day" (Tr. 165). Dr. Canty noted too that while Plaintiff "used the phrase "panic attacks" [she] clearly

7

does not have panic attacks and what she is describing is increased anxiety during periods of rumination" (Tr. 166). Plaintiff was assessed with a Global Assessment of Functioning (GAF) score of 75 (Tr. 165).[5] Dr. Canty found that Plaintiff was "fully functional from the psychiatric standpoint" and diagnosed only a history of polysubstance abuse (Tr. 165-166).

The ALJ noted that Plaintiff was being treated with Prozac, but he also noted that "there is no evidence in the record to suggest that this medication is not having the desired effect" (Tr. 22-23). Cf. Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983) (controlled conditions not disabling). The ALJ found it significant that there was no evidence of mental health treatment, other than the prescription of Prozac by a family physician (Tr. 23, 151). Further, there was no objective evidence showing, for example, severe panic attacks or emergency room treatment (Tr. 23).

Contrary to Plaintiff's argument, the lack of mental health treatment, including a no show for a psychiatric referral (Tr. 191), supports the ALJ's determination that Plaintiff had no severe mental impairment. It is not the ALJ's duty to create a record.

Finally, the reports of State agency physicians who reviewed the medical evidence provided further support for the ALJ's finding that Plaintiff's impairments did not result in functional limitations

---

[5] The Federal Register provides a historical explanation as to why the GAF scores do not factor into the Listings for mental impairment:

> We did not mention the GAF scale to endorse its use in the Social Security and SSI disability programs, . . . The GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to the severity requirements in our mental disorders listings.

Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746-01 (Aug. 21, 2000). However, GAF scores consider "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness" including factors such as education, housing, legal problems etc." American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994), pp. 29-32. Plaintiff's GAF score reflects only "transient and expectable reactions to psychosocial stressors" and "no more than slight impairment in social, occupational, or school functioning." DSM-IV, pp. 29-32.

precluding all work activity (Tr. 220-230). The ALJ did not err by finding Plaintiff had no severe mental impairments.

### ORDER

The Court hereby grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment or Remand. The Commissioner's decision is hereby affirmed, and Plaintiff's complaint is dismissed with prejudice.

IT IS SO ORDERED.

DATED: 8/1/07

*Saundra B. Armstrong*

SAUNDRA B. ARMSTRONG

United States District Judge